(79 South. 594)

CHAVERS et al. v. MAYO. (3 Div. 316.)

(Supreme Court of Alabama. June 27, 1918.)

1. JUDGMENT ⟨KEY⟩669—DISCLAIMER BY COMPLAINANT—EFFECT.

Where one of several complainants moves to strike his name from a bill to quiet title and dismiss it as to him, alleging he has no interest, did not authorize any one to make him a party, and refusing to be bound for costs and expenses, and no action is taken thereon, he thereafter becomes a respondent subject to the court's jurisdiction, and the decree rendered concludes his interest in the subject-matter of the litigation.

2. APPEAL AND ERROR ⟨KEY⟩240—PARTIES.

Having acquiesced in disclaimer by a complainant seeking to be dismissed from the case, by omitting to test same by proper motion or exception, neither party on appeal will be permitted to insist he is a complainant appealing and joining in the assignment of errors.

**3. APPEAL AND ERROR ⟊721(1) — JOINT ASSIGNMENT OF ERROR.**

A joint assignment by all appellants is unavailable unless well taken as to all.

**4. EQUITY ⟊71(4) — LACHES—ACQUIESCENCE AND KNOWLEDGE.**

Acquiescence in or knowledge of the assertion of an adverse right, and possession thereunder for an unreasonable time, is the basis of the rule of laches, which rule, after lapse of time, is presumed to attach where the equity of the case demands.

**5. EQUITY ⟊75—LACHES—ASSERTING TITLE —DELAY BY REVERSIONERS.**

Right of homestead without occupancy, or right of dower unassigned, do not amount to an estate in lands justifying delay by reversioners in asserting title, but only to a right of action for the land.

**6. ADVERSE POSSESSION ⟊81 — POSSESSION AND CLAIM OF OWNERSHIP — GRANTEE OF WIDOW.**

Land of a decedent not being subject to a life estate in his widow when sold by her, her sale thereof was a sale of the fee, so that her grantee's possession and claim of ownership thereunder and thereafter would suffice to complete the bar of the statute if retained for sufficient time.

**7. ADVERSE POSSESSION ⟊62(3)—POSSESSION OF DWELLING HOUSE—DOWER—NATURE OF RIGHT.**

Code 1907, § 3824, giving a widow right to possession of a dwelling house, with appurtenances free of rent, till dower assigned, gives her no property right that would by such occupancy defeat the ultimate title and right of possession descending to heirs.

**8. DOWER ⟊33—ASSIGNMENT OF RIGHT.**

The right of dower is in its nature a right of action not assignable otherwise than by a release to the heir or terre-tenant, and operating by way of extinguishment, and not by way of conveyance.

**9. HOMESTEAD ⟊141(1)—RIGHT OF WIDOW—ABANDONMENT—RIGHTS OF HEIRS.**

Right of homestead where the fee is not taken under the statutes is the right of the widow to occupy the land during her life.

**10. HOMESTEAD ⟊146—RIGHT OF WIDOW—ABANDONMENT—RIGHTS OF HEIRS.**

If by her alienation of homestead the widow abandons such right, the heir is given the right to immediate possession and right of action.

**11. LIMITATION OF ACTIONS ⟊72(1)—COMPUTATION OF PERIOD—INFANCY.**

Exception for additional time given by Code 1907, § 4846, to infants, does not enlarge the statute, but merely gives the person under disability the specified additional time in which to act or sue.

**12. ADVERSE POSSESSION ⟊33—EVIDENCE—KNOWLEDGE OF ADVERSE CLAIM.**

Evidence *held* to show that complainants knew of an adverse claim to land in controversy so as to impose on them the duty of asserting their right of action therefor within the bar of the statute.

Appeal from Circuit Court, Autauga County; Leon McCord, Judge.

Bill by Oma Chavers and others against J. W. Mayo. From a decree dismissing the bill and adjudging costs against complainants, they appeal. Affirmed.

P. E. Alexander and Guy Rice, both of Prattville, for appellants. Gipson & Booth, of Prattville, for appellee.

THOMAS, J. The bill, which was to remove cloud from title, was filed December 20, 1915. On final submission a decree was rendered for the defendant, dismissing complainants' bill and adjudging that "the complainants pay the cost in this behalf expended for which execution may issue."

The appeal bond filed July 23, 1917, recited that Oma Chavers and others were complainants, and J. W. Mayo and others were defendants. Its condition was that:

"Whereas, J. W. Mayo obtained a decree against Oma Chavers et al. in the above-entitled cause in the circuit court, in equity, of Autauga county, on the 2d day of July, 1917, from which decree the said Oma Chavers et al. have obtained an appeal returnable to the next term of the Supreme Court of Alabama: Now, therefore, if the said Oma Chavers et al. shall prosecute the said appeal to effect," etc.

The assignment of errors was joint, on behalf of complainants.

The original bill exhibited as the complainants therein Oma Chavers, F. S. Barber, J. R. Barber, and Eliza Wilson, and as respondents J. W. Mayo and Leola Cook. By amendment Leola Cook was stricken as a respondent and made a complainant.

[1] On March 6, 1916, before the original bill was amended and before answer of respondent Mayo was filed, "a protest" of one of complainants was filed, and is now made a part of the record. Among other things, it recited, "Comes J. R. Barber, one of the complainants in the above-styled cause, and moves the court to strike his name from the complaint and dismiss this bill of complaint so far as the same may or does affect him in all matters pertaining to this proceeding," and assigned as grounds: (1) That said complainant had no interest in the subject-matter of the suit; (2) that he did not authorize any one to make him one of the complainants; (3) that he refuses and has refused to become responsible for costs and expenses which may be incurred in the prosecution of the suit; (4) that he was made a party complainant without his authority, and to comply with some supposed rule of equity pleadings, by the complainants who are active in the prosecution; and (5) that he had no interest in the subject-matter of said proceedings, either as complainant or as respondent. Said complainant in said protest asked that his name be stricken from said bill of complaint, and prayed judgment of the court whether he should remain a party to said cause, etc.

After filing this pleading, no action being taken thereon by the court or by the real parties to the cause, said Barber could not thereafter be held to be a complainant. The effect of his disclaimer was that of a general appearance for a limited purpose, making him a party respondent subject to the jurisdiction of the court, and the decree then rendered concluding his interest in the subject-matter of the litigation. Fowler v. Brown,

51 Neb. 414, 71 N. W. 54; Isham v. Miller, 44 N. J. Eq. 61, 14 Atl. 20; Prescott v. Hutchinson, 13 Mass. 441; 6 Ency. Pl. & Pr. 721; Maddock, Ch. Pr. 336; Smith's Ch. Pr. 275; Story's Eq. Pl. (10th Ed.) § 838; 1 Daniell's Ch. Pr. (6th Ed.) § 706, p. 703; Cooper's Eq. Pl. 308, 311; Tedder v. Steele, 70 Ala. 347; Bromberg v. Heyer, 69 Ala. 22.

[2] If the complainants believed that said Barber had an interest in the lands, and that they were entitled to make him a party for his answer in aid of the suit against the real respondent, said Barber, by proper affirmative action, would have been made a party, and his answer required. Bromberg v. Heyer, 69 Ala. 22, 24. If the disclaimer was improperly filed, a motion to strike it from the file should have been entertained; or, if disclaimer was under oath and complainants were of opinion they were entitled to Barber's answer as to his interest, the insufficiency of the paper filed as an answer could have been tested by exception thereto. Sims' Ch. Pr. § 401, and authorities; 2 Daniell's Ch. Pr. 808; Bromberg v. Heyer, 69 Ala. 22. Having acquiesced in the sufficiency and truth of the disclaimer or answer, by omitting to test the same by proper motion or exception, on this appeal, neither party will be permitted to successfully insist that Barber was a complainant appealing and joining in the assignment of errors.

[3] The final decree injuriously affected complainants' several interests in the lands; all having prosecuted an appeal and jointly assigned errors, the assignment is unavailable unless well taken as to all the appellants. If all of the complainants were not injured by the rendition of the decree, such complainants (appellants) should have asked and had a severance in this court from other appellants not so affected, after which separate errors should have been assigned. Hall v. First Bank of Crossville, 196 Ala. 627, 72 South. 171; Kimbrell v. Rogers, 90 Ala. 339, 7 South. 241; Lillich v. Moore, 112 Ala. 532, 20 South. 452; Hillens v. Brinsfield, 113 Ala. 304, 21 South. 208; Davis v. Vandiver, 160 Ala. 454, 49 South. 318; Adams v. Bibby, 194 Ala. 652, 69 South. 588; Mobile Temperance Hall Asso. v. Holmes, 195 Ala. 437, 70 South. 640. That is to say, since McGehee v. Lehman, Durr & Co., 65 Ala. 316, 320, it has been a rule of practice in this court to disregard assignments of error made jointly, as to the matters which are available to some of the appellants only. This rule is founded on the reason that parties cannot claim a reversal because of errors not injurious as to them. Roberts v. Trawick, 13 Ala. 68; Walker v. Jones, 23 Ala. 448; Magruder v. Campbell, 40 Ala. 611.

It is shown by the evidence that the parents of the complainants, John L. Barber and Nancy C. Barber, died intestate, respectively, in August, 1895, and August, 1909; that the lands in question were owned by John L. Barber, and that he was in possession of same before and at the time of his death; and that thereafter his wife, with complainants, or some of them, remained on the land until the date of her sale to J. W. Mayo, August 21, 1903, on which date Mayo made her a deed to a specifically described two-acre tract of said land, which she moved upon with her family, and occupied as a homestead. It is without dispute that after the death of Mr. Barber no homestead or dower rights in any of said lands were claimed, allowed, or set apart to her as such widow. For the purposes of this decision, it may be taken as a fact that for a while she occupied the land under her quarantine right, though respondent denies that she was holding possession of the land after the death of her husband as a quarantine right, or that her possession was that of a life tenant. Respondent says she had or acquired a superior title therein, incompatible with a quarantine right, under which she conveyed to Mayo, and that this conveyance, with claim of ownership and possession thereunder, was a denial of the right of her children (complainants here) as heirs at law and next of kin of her deceased husband. We will not discuss the nature and character of this superior title alleged to have been held by Mrs. Barber, believing it to be unnecessary.

[4-6] Acquiescence in, or knowledge of, the assertion of an adverse right and possession thereunder for an unreasonable time is the basis of the rule of laches, which rule, after lapse of time, is presumed to attach where the equity of the case demands. Veitch v. Woodward Iron Co., 76 South. 124.[1] Complainants cannot justify their long delay after Mrs. Barber's sale to Mayo and his adverse possession thereunder in asserting their rights or claim of ownership under the authority of Winters v. Powell, 180 Ala. 425, 61 South. 96, because of the fact that said lands were not impressed with a life estate. The right of homestead without occupancy as such, or the right of dower unassigned, did not amount to an estate in the lands, but only to a right of action for the lands.

The property not being subject to a life estate in Mrs. Barber at the time of her sale, her sale or attempted sale thereof to Mayo can only be held to have been a sale of the fee to the 240 acres in question; and his possession and claim of ownership thereunder and thereafter would suffice to complete the bar of the statute if retained for sufficient length of time.

In Winters v. Powell, supra, the property was subject to the life estate of Mrs. Powell, and Mr. Justice Sayre was careful to indicate that until her death there was never a time when the complainants could have had judgment presently, upon the possession or enjoyment of the property; hence that there was no default or delay in the assertion of the right.

The distinction between the two cases lies

[1] 200 Ala. 358.

in the fact that in the Powell Case the whole tract was charged by the will with a life estate; whereas here some part, at least, of the 240 acres of land in question was subject to homestead and dower, if occupied and assigned as required by statute.

[7, 8] It is true the statute gave the widow the right to retain possession of the dwelling house where the husband most usually resided next before his death, with the offices and buildings appurtenant thereto, free of rent, until her dower should be assigned (Code, § 3824; Yarbrough v. Yarbrough, supra), but it gave her no property right that would by such occupancy defeat the ultimate title and right of possession descending to the heirs at law of John L. Barber on his death. Yet the insistence of appellants that there was created a life estate in Mrs. Barber, that she might and did convey to Mayo without prejudice to complainants, however long such conveyance was acquiesced in by them, is not well founded; for, until dower was assigned to Mrs. Barber as a prospective dowress (2 P. Wms. 707) in said lands, she had no specific estate therein the right of dower in its nature being a right of action not assignable otherwise than by "a release to the heir or terre-tenant," and operating "by way of extinguishment, and not by way of conveyance." Barber v. Williams, 74 Ala. 331, 333; Francis v. Sandlin, 150 Ala. 583, 43 South. 829; Saltmarsh v. Smith, 32 Ala. 404, 408.

[9, 10] Right of homestead exemption where the fee is not taken under the statutes is the right of the widow to remain in the occupancy of the homestead of the deceased husband during her life; and if by her alienation to third persons she abandons the right of homestead, the heir is given right to the immediate possession and right of action. Gilbert v. Pinkston, 167 Ala. 490, 493, 52 South. 442, 140 Am. St. Rep. 89; Munchus v. Harris, 69 Ala. 506, 509; Baker v. Keith, 72 Ala. 121.

[11] The youngest of the complainants, the children of John L. Barber, was 28 years of age when suit was filed. This heir, Mrs. Wilson, could have maintained her suit to enforce her right in the land within 3 years after her disabilities were removed or terminated. Code, § 4846. An exception for additional time in which to assert a right given by statute to infants and those under disability does not have the effect of enlarging the statute of limitation, but merely gives the person under disability the specified additional time in which to act or sue. Lovelace v. Hutchinson, 106 Ala. 417, 17 South. 623; Alexander v. Hill, 88 Ala. 487, 7 South. 238, 16 Am. St. Rep. 55; Newburn's Heirs v. Bass, 82 Ala. 622, 2 South. 520; Bradford v. Wilson, 140 Ala. 633, 37 South. 295; Stockdale v. Cooper, 193 Ala. 258, 69 South. 110; Street v. Shaddix, 197 Ala. 446, 73 South. 73; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 South. 124; Dallas Compress Co. v. Smith, 190 Ala. 423, 67 South. 289.

[12] Under the facts disclosed, the opportunity and the duty rested on the adult complainants to duly assert their right of action within the bar of the statute, and on those of complainants who were infants to avail themselves of their right of action within the time prescribed by the statute, after attaining majority. Veitch v. Woodward Iron Co., supra; Code, § 4846; Stockdale v. Cooper, 193 Ala. 258, 69 South. 110. Mrs. Wilson testified that she lived with her mother on the two-acre homestead tract until she was married about 16 years ago, that she knew her mother had sold the other land to Mayo, and that she moved therefrom with the mother to the latter homestead. On cross-examination she was asked, "You know that your mother bought two acres to live on?" and replied, "She had the two acres to live on herself; she didn't sell it to him; she kept it out of her land from the time she sold the rest to Mr. J. W. Mayo."

On redirect examination she was asked, "Do you remember renting any of the land?" (meaning the lands in question), and replied, "Yes, sir." To the questions, "Your mother was living at that time?" and, "You know that Mr. Mayo bought this from your mother?" she gave the same answer, "Yes, sir."

Another of appellants, F. L. Barber, had knowledge of the possession of the lands by Mayo as a purchaser from Mrs. Barber; did not know the exact date he received the information; thought it was in 1900 when he and J. R. Barber had some understanding that they would buy the land in question from their mother; learned that Mayo had bought it, and had exclusive possession, claiming to own the fee. Witness admitted that he had cultivated a crop on part of the land, and delivered a portion thereof to Mayo as the rent.

It is certain that at least two of complainants knew the nature of Mayo's holding as purchaser, and in hostility to their rights. Thereafter they delayed suit therefor, beyond the period prescribed by statute as the time within which the youngest of complainants might sue.

For the foregoing reasons, the decree of the circuit court in equity is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur.